Submitted October 27, 2020, affirmed January 6, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MATTHEW GAYLEN BUSWELL,
*Defendant-Appellant.*

Tillamook County Circuit Court
19CR19503; A172251

479 P3d 341

Defendant was convicted of first-degree robbery, ORS 164.415, and unlawful use of a weapon, ORS 166.220, after robbing a bank. Defendant appeals a supplemental judgment ordering him to pay $574.71 in restitution to the victim, S, who was working at the bank during the robbery. Defendant argues that the trial court erred when it determined that S sustained economic damages and that those damages resulted from defendant's criminal conduct. The state argues that the trial court did not err in ordering restitution, because S had to use three days of earned sick-time benefits to recover from the trauma caused by the bank robbery, and S consequently lost those benefits for future family medical needs. *Held*: Under the circumstances, S's lost sick time is a cognizable economic damage, and the evidence in the record supports the trial court's determinations as to damages and causation; therefore, the trial court did not err in imposing restitution.

Affirmed.

Richard Baldwin, Senior Judge.

Frances J. Gray filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Affirmed.

**TOOKEY, J.**

Defendant was convicted of first-degree robbery, ORS 164.415, and unlawful use of a weapon, ORS 166.220. He appeals a supplemental judgment ordering him to pay $574.71 in restitution to the victim, S. Defendant argues that the trial court erred when it determined that S's loss qualified as economic damages and that S's loss resulted from defendant's criminal conduct. We conclude that the evidence in the record supports the trial court's determinations as to damages and causation, and, therefore, that the trial court did not err in imposing restitution. Accordingly, we affirm.

"We review whether a trial court complied with the requirements for imposing restitution for errors of law." *State v. Smith*, 291 Or App 785, 788, 420 P3d 644 (2018) (citation omitted). "Whether the prerequisites for imposing restitution have been met is ultimately a legal question that will depend on the trial court's findings of fact." *Id.* (citation omitted). "[W]e will uphold the trial court's findings of fact so long as there is any evidence in the record to support them," and we "review the evidence supporting the trial court's restitution order in the light most favorable to the state." *Id.* (citations and internal quotation marks omitted). "If the trial court did not make express findings on a disputed fact, we assume that the court implicitly found the facts consistent with the judgment entered." *State v. Lobue*, 304 Or App 13, 16, 466 P3d 83 (2020) (citation omitted). In accordance with that standard, we state the following facts.

Defendant was convicted of first-degree robbery and unlawful use of a weapon for robbing a bank in March 2019. At the time of the robbery, S was the bank manager on duty. S testified at a restitution hearing that, during the robbery, defendant had "pointed the gun to us, *** made us give him his money," and "told me to get in the vault." S further testified that, as a result of her ordeal, she "had anxiety," "couldn't breathe," and needed to "take three days off of work due to the trauma." S testified that, for those three days off, she used three days of "sick time" she had accrued while working at the bank. S explained that, "after 30 hours worked, you earn one hour of sick time." S also testified that in June 2019, her youngest child was sick, and she "had to

use three days' vacation[,] * * * [b]ecause I didn't have any sick time."

At the restitution hearing, the state explained that S took three days "off of work due to the trauma"; that "she took sick time which she had accrued" to cover those three days; that "because she used those sick days up, they weren't available to her later on"; and that, in June 2019, she "had a child that was sick" and "needed to be home with the child," but "didn't have the sick days available, so [she] had to use vacation time" for those three days. Bank policy allowed employees to "cash in" unused vacation time when they left employment. So, the state also explained, when S left the bank in July 2019, she was unable to cash in those three days' worth of vacation time, because "she used it for the sick time" to care for her sick child in June.

Ultimately, the trial court ordered defendant to pay restitution to S in the amount of $574.71 and explained that,

> "Based on the evidence submitted by the state, the court finds as a matter of law based on those facts that it is foreseeable that someone—that a teller or bank manager would have to use sick leave in this manner. It's not remote or so attenuated that it's not foreseeable.

> "So the court does overrule the objection to the restitution amount and does order the restitution amount."

On appeal, defendant argues that "S did not incur an 'economic damage' as a result of the robbery because she was paid in full by the bank for the three days of sick leave that she used." Defendant also argues that "any causal relationship to the robbery is speculative." The state argues in response that

> "[S] used banked sick leave to cover for the missing wages * * *. But that meant she immediately lost the value of three days of already earned leave.

> "* * * * *

> "* * * [S]he had to claim earned sick leave pay in an amount equivalent to three days of regular salary. Which meant that she permanently lost the value of that leave for future family medical needs. * * * But for defendant's crime, the victim would have earned regular wages on those days

and would not have suffered a loss of leave equal to three days[] of wages."

Thus, the state argues, "the trial court did not err in ordering restitution."

Under ORS 137.106, a trial court awards restitution "when three prerequisites are met: (1) criminal activities; (2) economic damages; and (3) a causal relationship between the two." *State v. Andrews*, 366 Or 65, 69, 456 P3d 261 (2020).

In the instant case, defendant does not dispute that his commission of the bank robbery in March 2019 constitutes criminal activity. Rather, defendant disputes only whether S suffered economic damages and whether there is a causal relationship between S's damages and his bank robbery.

We begin by addressing economic damages. For restitution purposes, "the term 'economic damages' generally 'means verifiable monetary losses.'" *State v. Plagmann/ Samora*, 304 Or App 785, 788, 469 P3d 288 (2020) (citing ORS 31.710(2)(a) and ORS 137.103(2)(a)).[1] "Objectively verifiable monetary losses * * * include monetary losses that a victim could recover if the victim were a plaintiff in a civil action against the defendant." *Id.* (citations and internal quotation marks omitted).

Defendant contends on appeal that the trial court erred because it ordered restitution for the three days of vacation time that S was unable to cash in, and, with regard to that lost vacation time, further contends that "S's future ability to recoup the value of an employment benefit is not an 'economic damage.'" The chief difficulty with defendant's contentions is that the record does not reflect that the court said anything about S's lost vacation time, much less that

---

[1] ORS 31.710(2)(a) provides, in its entirety:

"'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

it was awarding restitution based on S's lost vacation time. Rather, as we explain below, the court determined that, under the circumstances, S suffered economic damages in the form of lost sick time, which is a recognized form of damages in civil actions.

Although Oregon courts have not squarely addressed whether plaintiffs in civil actions can recover damages for their lost sick time, those damages appear to have been awarded in multiple cases. *See, e.g.*, *Foster v. Miramontes*, 352 Or 401, 403, 287 P3d 1045 (2012) (referring to trial court awarding damages for plaintiff's lost sick and annual leave); *Mulligan v. Hornbuckle*, 227 Or App 520, 522, 206 P3d 1078, *rev den*, 347 Or 42 (2009) (referring to jury verdict, which included a $2,059 award for plaintiff's lost sick time wages).[2] That is consistent with the general understanding among courts in other jurisdictions that plaintiffs can recover the value of accrued sick time when they have used that earned employment benefit due to tortious injury and, consequently, are no longer able to avail themselves of that time, which otherwise would have been available for alternate uses. *See, e.g.*, H.B. Chermside, Annotation, *Receipt of Compensation from Consumption of Accumulated Employment Leave, Vacation Time, Sick Leave Allowance, or the like, as Affecting Recovery Against Tortfeasor*, 52 ALR 2d 1451 (1957) (discussing several cases in which plaintiffs recovered for accrued sick pay benefits expended due to tortious injury and, thus, lost for future use); *Payment of Wages by Employer—Vacation or Sick Pay*, 22 Am Jur 2d Damages § 401 at 363 (2003) ("[P]laintiff is entitled to compensation on the theory of being forced to use some of his or her sick-leave entitlement as a result of the defendant's negligence; sick leave used diminishes the amount available for any future injury."). We are persuaded that, under Oregon law, a plaintiff in a civil case would be entitled to damages for used sick leave under that same theory of economic loss.

In this case, S suffered economic damages in the form of the sick time she used and no longer had available.

---

[2] *But cf. Franklin v. PCC*, 100 Or App 465, 467-69, 787 P2d 489 (1990) (holding that plaintiff did not allege facts sufficient to show that loss of accrued sick time, where the employment contract itself continued unchanged, supported a claim for intentional interference with an economic relationship).

As noted above, S testified that she needed to take three days off of work due to the traumatizing robbery and had to use three days of sick time, which she had earned by working.[3] But because she used those sick days, they were not available to her later on. Indeed, as S testified, those lost sick days were not available when she needed to use them to care for her sick child. The trial court then found that, "[b]ased on the evidence submitted by the state, *** a teller or bank manager would have to use sick leave in this manner." Thus, we understand the trial court to have made a determination—supported by evidence in the record—that, under these circumstances, S had incurred economic damages in the form of her lost sick time. That determination is consistent with the theory of loss articulated above, where, as here, an injured party uses their earned sick leave due to a wrongdoer's conduct, which thereby diminishes the amount of sick time they have available for other uses.

Next, we address causation. For restitution purposes, "[t]he requirement of a causal relationship means that the defendant's criminal activities must be [1] a 'but for' cause of the victim's damages and [2] that the damages must have been a reasonably foreseeable result of the defendant's criminal activities." *Smith*, 291 Or App at 789 (citations and internal quotation marks omitted).

Defendant contends that "any inference of a causal relationship between the robbery in March and [S]'s inability to 'cash out' three vacation days in July is speculative." Defendant likewise contends that "[t]here is no causal relationship between the robbery and the fact that [S]'s child became ill in June." Both contentions are unavailing for the same reason: they address causal relationships other than the one at issue here—*viz.*, the relationship between defendant's robbery and S's subsequent loss of accrued sick time.

Defendant concedes that "it is a reasonably foreseeable consequence of the robbery that [S] would use sick leave immediately following the robbery to recover from

---

[3] S testified that she used three days, or 24 hours, of sick time, and that she earned one hour of sick time for every 30 hours work. Simple arithmetic reveals that S would have had to work 720 hours in order to earn the sick time she used to recover from her trauma.

its trauma." Consequently, we address only whether defendant's robbery was a "but for" cause of S's lost sick time.

For a "defendant's criminal activities" to be "a 'but for' cause of the victim's economic damages," the "record must support a nonspeculative inference that there is a causal relationship between the defendant's criminal activities and the victim's economic damages." *Smith*, 291 Or App at 789 (citations and internal quotation marks omitted). But "the damages need not be the *direct* result of defendant's criminal activity." *Id.* (citations and internal quotation marks omitted; emphasis in original).

In this case, defendant's bank robbery was a "but for" cause of S's lost sick time. The trial court did not make explicit findings as to "but for" causation. Yet, as noted above, we assume that the trial court implicitly found the facts consistent with the judgment entered. Here, the fact that defendant's bank robbery was a "but for" cause of S's lost sick time is consistent with the supplemental judgment imposing restitution, and the record supports a finding that defendant's robbery caused S's lost sick time. S testified that, because she was traumatized by the robbery, she took off three days of work, used up three days of earned sick time, and, as a result, did not have those three days of sick time available for other uses. Put simply, the record reflects that, but for defendant's robbery, S would not have lost those three days of accrued sick time.

For the foregoing reasons, we conclude that evidence in the record supports the trial court's determinations as to damages and causation, and, therefore, that the trial court did not err in imposing restitution. Accordingly, we affirm.

Affirmed.